UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

**CV 07    2189**

SIFTON, J.

**J. ORENSTEIN, M.J.**

TINA MORRIS, as Administratrix of the Estate
of JOHN OTTO HEIDEL, Deceased, and
TINA MORRIS, Individually,

                    Plaintiff,

          -against-

THE CITY OF NEW YORK, THE NEW YORK
CITY POLICE DEPARTMENT, STEPHEN
CARACAPPA and LOUIS EPPOLITO,

                    Defendants.
-----------------------------------------------------------X

**COMPLAINT**
Trial by Jury Demanded
On All Issues

Index No.

FILED
IN CLERK'S OFFICE
(BES 7508) DISTRICT COURT E.D.N.Y.

★  MAY 30 2007  ★

BROOKLYN OFFICE

The Plaintiff, by her attorneys, **THE LAW OFFICES OF BARRY E SCHULMAN**

**AND TERESA R. GUASTAFERRI, LLC,** do state and say for her Complaint as follows:

## JURISDICTION

1.  At all times hereinafter mentioned, plaintiff was and still is a resident of the

County of Middlesex, State of New Jersey.

2.  Defendant, the City of New York is, and at all times heretofore mentioned was, a

municipal corporation existing by virtue of the laws of the State of New York.

3.  Defendant, New York City Police Department is a subdivision of defendant, the

City of New York.

4.  Defendants Stephen Caracappa and Louis Eppolito were at all times material

hereto, members of the New York City Police Department, each holding the rank of

Detective.

1

5.  Venue exists in this Court pursuant to 28 U.S.C. §1391(a)(2) in that the plaintiff is a resident of the State of New Jersey.

6.  Venue exists in this Court pursuant to 28 U.S.C. §1391(a)(2) in that the incidents which gives rise to all of the events or omissions occurred within the County of Kings, City and State of New York; and the plaintiffs decedent, JOHN OTTO HEIDEL, was a resident of the County of Kings, City and State of New York at the time of his death.

7.  This Court has subject matter jurisdiction exists in this Court pursuant to 28 U.S.C. §1332 in that the amount in controversy exceeds $75,000.00, together with costs and interests, and there is complete diversity of citizenship between the plaintiff and defendant.

8.  This Court has subject matter jurisdiction over this action pursuant to Title 28 of the United States Code, §1331, 1343 and 1367, and Title 42 of the United States Code, §1983 and 1985.

9.  This Court has supplemental jurisdiction over plaintiff's State law claims against defendants for violations pursuant to 28 U.S.C. § 1367, as the common law claims form part of the same case or controversy.

10. On January 12, 2007, TINA MORRIS, was granted Limited Letters of Administration by the Surrogate's Court of Kings County, appointing her Administratrix of the Estate of JOHN OTTO HEIDEL, deceased, authorizing her to maintain this action on behalf of the heirs at law and next-of- kin of said decedent.  Said letters are still in full force and effect.

11. This is a proceeding for compensatory and punitive damages owing to the plaintiff as a result of violations of Civil Rights under the Fifth and Fourteenth Amendments to the Constitution of the United States and under Federal law, particularly Title 42 of the United States Code, Section 1983, Title 18 of the United States Code, Section 1965(a), and Title 18 of the United States Code Section 1962.

## JURY DEMAND

12. Plaintiff demands a trial by jury on all issues pursuant to the Seventh Amendment to the United States Constitution and Fed. R. Civ. P 38.

## ALLEGATIONS

13. At the time of decedent's death, the plaintiff TINA MORRIS, was a resident of the County of Richmond, City and State of New York.  At the present time the plaintiff, TINA MORRIS, is a resident of the State of New Jersey.

14. At the time of the decedent's death, decedent was a resident of the County of Kings, City and State of New York.

15. At all times herein mentioned, plaintiff, TINA MORRIS, was the daughter of JOHN OTTO HEIDEL.   The plaintiff, TINA MORRIS, is the sole issue of the decedent, JOHN OTTO HEIDEL.

16. Defendant the City of New York operates and governs the New York City Police Department pursuant to the laws of the State of New York.  Defendants City of New York and New York City Police Department are responsible *inter alia*, for the management,

3

administration, conduct and supervision of all personnel employed by the New York City Police Department to protect the safety of the public.

17. Defendants Caracappa and Eppolito were acting as police officers and detectives in the scope of their employment and under color of law for defendants the City of New York and New York City Police Department. They are presently incarcerated following their conviction after trial in the United States District Court for the Eastern District of New York.

18. Louis Eppolito was employed by the New York City Police Department from August 1, 1969 to February 18, 1990. At the time of his retirement from the Police Department, Eppolito held the rank of Detective.

19. Stephen Caracappa was employed by the New York City Police Department from June 30, 1969 to November 4, 1992. At the time of his retirement from the Police Department, Caracappa held the rank of Detective.

20. At all times pertinent hereto the defendants acted under the color of law, of a statute, ordinance, regulation, custom or usage.

21. Prior to the commencement of this action, and within ninety (90) days of disclosure and discovery of the role of the police officer defendants in the death of her father, and the facts and circumstances surrounding the manner of death of JOHN OTTO HEIDEL, a Notice of Claim and Amended Notice of Claim were served upon the City of New York on May 31, 2006 and June 5, 2006, on behalf of the plaintiff, the sole issue of the decedent.

22. On July 19, 2006, a hearing was conducted by the defendant City of New York pursuant to General Municipal Law § 50-h.

4

23. That at least thirty days have elapsed prior to the commencement of this action and since the service of the notice of claim, and adjustment or payment has been neglected or refused by the defendant.

24. This action was commenced within one (1) year and ninety (90) days of the disclosure and discovery of the roles of the defendant police officers in the death of plaintiff's father, and the facts and circumstances surrounding the manner of death of the decedent, JOHN OTTO HEIDEL.

25. The statute of limitations in this action was tolled pursuant to C.P.L.R. § 213-b(2).

26. A Petition was filed in the Supreme Court of the State of New York, County of Kings, on May 29, 2007 seeking an Order, pursuant to General Municipal Law § 50-e (5), to file the Notice of Claim **nunc pro tunc** or in the alternative deeming the aforesaid Notice of Claim timely filed against the City of New York, the New York City Police Department, Stephen Caracappa and Louis Eppolito.  The petition is currently pending.

27. The decedent, JOHN OTTO HEIDEL, was murdered on October 8, 1987 in the County of Kings, City and State of New York.

28. On October 8, 1987, the decedent JOHN OTTO HEIDEL, was in transit to the plaintiff's home for dinner that evening when he telephoned the plaintiff and informed her that his car had a flat tire in the vicinity of East 35th Street and Avenue U, Brooklyn, New York, and that he would be late in arriving to her home.

29. Later that evening, two men who identified themselves as police officers, came to the plaintiff's home and informed her that her father had been gunned down in Brooklyn, New York.  They showed the plaintiff a photograph of her father's dead body, as it lay

sprawled in the middle of the street, in a pool of blood. The officers asked her to confirm that the individual in the photograph was the body of her father.

30. The two police officers informed the plaintiff that her father had been the victim of a "mob hit." Just prior to decedent's murder he was seen fleeing on foot from two gunmen on mopeds, as they shot at him. The decedent continued to flee as the gunmen repeatedly shot him.

31. Upon information and belief, the decedent was shot approximately eleven times in or about his entire body. The decedent fled until the gunshot wounds rendered him unable to do so, and then he collapsed in the street. The decedent's body remained in the street for several hours before it was removed from the murder scene.

32. In the months prior to decedent's death he informed the plaintiff that he was working with the F.B.I. and was "wearing wires" as part of his cooperation with the government. The decedent repeatedly told the plaintiff that he feared for his own life because of his cooperation with the government, and that he was certain that he was being followed on a daily basis.

33. At the same time the decedent also told the plaintiff that he was "in trouble, and that two "crooked" cops had approached him, and threatened him, stating that if he did not give them certain information that they wanted, they would say he did anyway. Thus, the officers threatened to openly disclose that the decedent was a cooperating witness, thereby placing his life in grave danger. The decedent never specified who the officers were, or whom they worked for. The decedent did not tell the plaintiff any further details concerning his cooperation with the government.

34. Upon information and belief, between January 1, 1987 and October 8, 1987, the decedent, JOHN OTTO HEIDEL, was cooperating with various law enforcement agencies at the time of his death, and for several months prior to his death.

35. Upon information and belief, between January 1, 1987 and October 8, 1987, the decedent JOHN OTTO HEIDEL, was providing sensitive information to law enforcement officials concerning certain burglaries and/or other criminal activities that were ongoing, conducted in the past or about to be conducted by members and/or affiliates of an organized crime family in New York City, headed by Anthony Casso ("Casso").

36. Upon information and belief, between January 1, 1987 and October 8, 1987, the decedent, JOHN OTTO HEIDEL, did indeed wear body wires that enabled law enforcement agents/officials to overhear conversations concerning certain criminal activities that were ongoing, had taken place or were planned to take place in the near future.

37. At or about 1986, Burton Kaplan, ("Kaplan") a career criminal, enlisted the assistance of a former fellow inmate, Frank Santoro, defendant Eppolito's cousin, who agreed to sell Kaplan confidential law enforcement information to be obtained by defendants Eppolito and Caracappa.

38. In or about September, 1987, Kaplan began dealing directly with Eppolito and Caracappa. Eppolito and Caracappa agreed to provide law enforcement information to Kaplan in exchange for a retainer of $4,000.00 each month. Eppolito told Kaplan that Caracappa worked in an organized crime task force and that he had access to a significant amount of information about investigations into organized crime.

39. Kaplan discussed Eppolito's proposal with Casso, and then accepted on Casso's behalf. Defendants Eppolito and Caracappa were aware that the law enforcement information they gave to Kaplan would be passed to Casso.

40. During the period of 1987 through approximately 1993, when Casso had been arrested and Caracappa had retired, Eppolito and Caracappa were paid $4,000.00 each month to supply law enforcement information regarding ongoing investigations, informants, wiretaps and pending arrests.

41. The information provided to Kaplan was gathered by Eppolito and Caracappa when they were employed as detectives in the New York City Police Department. Eppolito and Caracappa were also using their positions as New York City Police detectives to provide assistance and services to members of organized crime engaged in a wide range of criminal activities.

42. On or about and prior to October 8, 1987, pursuant to the aforementioned arrangement with Kaplan, Eppolito and Caracappa used their positions as New York City Police detectives to obtain access to a confidential New York City Police Department database that contained information about government informants, including the decedent, John Otto Heidel.

43. On or about and prior to October 8, 1987, Caracappa and Eppolito used the information they had obtained from confidential New York City Police Department records about decedent John Otto Heidel, by providing said information to Kaplan, Casso, and/or other members of the organized crime family with the knowledge that doing so would result in the decedent's demise.

8

44. As a direct result of the information obtained from the confidential database of the New York City Police Department by Caracappa and Eppolito concerning John Otto Heidel's cooperation with law enforcement, which was then provided to Kaplan and Casso, the decedent was killed on October 8, 1987.

45. After a trial by jury, before the Honorable Jack B. Weinstein in the United States District Court for the Eastern District of New York, defendants Caracappa and Eppolito were convicted on April 6, 2006 of various federal crimes, which included the murder of John Otto Heidel.

46. At the time of their involvement in the death of Mr. Heidel, defendants the City of New York and New York City Police Department were aware of Eppolito's and Caracappa's connections to Organized Crime while they were employed as members of the New York City Police Department. Defendants the City of New York and the New York City Police Department permitted Caracappa and Eppolito to retain their positions with the New York City Police Department, gave them access to confidential information regarding Organized Crime investigations, and allowed them to continue to use their authority as New York City Police detectives in contact with residents of New York City.

47. Upon information and belief, in 1984 defendant Louis Eppolito was suspended by the New York City Police Department, based on an accusation by the Federal Bureau of Investigation of passing sensitive Organized Crime intelligence files to Rosario Gambino, a known criminal. Upon information and belief, the FBI provided the Police Department with supporting information that placed the Police Department on notice of Eppolito's connections to organized crime. Despite his suspension, defendant Eppolito was nevertheless allowed to

9

continue his employment at the New York City Police Department with access to confidential information concerning organized crime.

48. Despite notice that confidential systems had been breached or compromised, no steps were taken by defendants the City of New York and/or New York City Police Department, to secure or limit the access of Caracappa and Eppolito to databases maintained and controlled by the above named defendants or to monitor or supervise their use of said databases or access to other confidential material in the possession of the Police Department.

49. The defendants the City of New York and/or New York City Police Department, did not take adequate steps or precautions to secure or limit or monitor access by Caracappa and Eppolito to databases maintained and controlled by the above named defendants or to monitor or supervise their use of said databases or access to other confidential material in the possession of the Police Department. The defendants City of New York and/or New York City Police Department failed to do so to prevent such unauthorized and criminal access to the databases or other confidential material.

50. In arranging for the murder of John Otto Heidel, defendants Caracappa and Eppolito acted with the express and tacit consent, knowledge and authorization of defendants the City of New York and New York City Police Department. They used research facilities and databases maintained and controlled by defendants City of New York and New York City Police Department to obtain confidential information which allowed them to give Kaplan and Casso the information needed to order the murder of John Otto Heidel.

10

51. As a result of their prior knowledge of the connections between Eppolito and organized crime figures, it was foreseeable to defendants City of New York and New York City Police Department that Eppolito and his partner Caracappa, would continue to provide information and services to members of organized crime which could foreseeably lead to harm, including deadly physical force, against individuals such as John Otto Heidel.  By virtue of their continued employment as New York City Police detectives who were permitted to act under color of law on behalf of the Police Department and the City of New York, and who acted without proper supervision or monitoring by senior officials of the Police Department, Caracappa and Eppolito acted with the express and tacit consent, knowledge and authorization of defendants City of New York and New York City Police Department.

52. In and about September 2005, The Office of the United States Attorney for the Eastern District of New York made public the second supplemental indictment of defendants Eppolito and Caracappa on a variety of charges, including the conspiracy and murder of John Otto Heidel.

53. Testimony at the trial of the indictment proved beyond a reasonable doubt that in exchange for financial reward defendants Eppolito and Caracappa provided members of organized crime with sensitive and confidential information in the control of the New York City Police Department and available exclusively through their position of authority within the New York City Police Department.  That information was used by Caracappa and

11

Eppolito to help arrange the murder of John Otto Heidel, and to commit many other crimes of which they now stand convicted.

54. The defendants were convicted on April 6, 2006.

55. From October 8, 1987 until mid-March of 2006, the plaintiff had neither knowledge nor reason to know that the defendants had any involvement with the death of her father, and could not even with the exercise of due diligence determine the circumstances of his death. It was not until the plaintiff was called to a meeting in the middle of March 2006 by the United States Attorney's Office for the Eastern District of New York, that the plaintiff learned of defendants Caracappa and Eppolito's involvement in the murder of her father, John Otto Heidel.

56. Prior to October 8, 1987, and thereafter until the arrest and formal charging of defendants Eppolito and Caracappa, despite knowledge based upon prior acts and suspicions, defendants City of New York and New York City Police Department failed to sufficiently investigate, monitor or supervise the defendants Eppolito and Caracappa.

57. The defendants have acted with malice and with willful indifference toward the plaintiff and decedent and with deliberate disregard for the statutory and constitutional rights of the plaintiff and decedent.

58. The defendants' actions caused the deprivation of the life of the decedent without due process.

59. Upon information and belief, at all times pertinent thereto the City of New York and New York City Police Department were aware of a pattern and practice of unlawful activity by defendants Eppolito and Caracappa.

12

60. Upon information and belief, defendants City of New York and New York City Police Department maintained a system of review of police conduct through its departments, including Internal Affairs, which as ineffective and allowed the unreasonable, excessive and unlawful conduct and denial of Constitutional rights by Detectives Eppolito and Caracappa.

61. The acts, omissions, systemic flaws, policies and customs of defendants City of New York and New York City Police Department caused defendants Eppolito and Caracappa to believe that their unlawful enterprise and cooperation with organized crime would not be honestly, aggressively and properly investigated, with the foreseeable result that the unlawful acts of defendants Eppolito and Caracappa would result in the death of plaintiff's decedent and others.

62. As a direct and proximate cause of the acts and omissions of the defendants, John Otto Heidel was deprived of his civil rights and was unconstitutionally deprived of his life. Plaintiff, Tina Morris, has been wrongfully denied the company, services, comfort and companionship of her father, has become physically sick and was forced to suffer the mental cruelty associated with the unexplained murder of her father.

### COUNT I:
### VIOLATION OF CONSTITUTIONAL
### RIGHTS UNDER 42 U.S.C. 1983

63. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 62, with the same force and effect as if herein more fully set forth.

64. Defendants Eppolito and Caracappa, by their foregoing acts intentionally and willfully acted jointly and severally under color of law, statute, ordinance, regulations, customs and practice of the State of New York, subjected and caused to be subjected the

13

decedent John Otto Heidel, and plaintiff Tina Morris deprivation of her rights, privileges and immunities secured to her by the Constitution and laws of the United States.

65. The conduct of defendants Eppolito and Caracappa in depriving John Otto Heidel of life, liberty and property violated the decedent John Otto Heidel and plaintiff Tina Morris' right to due process of law as protected by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

66. The foregoing deprivations of decedent John Otto Heidel and plaintiff Tina Morris; Constitutional rights were further caused by the City of New York and New York City Police Department by allowing or negligently tolerating:

> (a) The institution and implementation of grossly reckless or deliberately inadequate policies, procedures and regulations of its Police Department respecting the safeguarding of the Constitutional rights of the public and the proper and competent conduct of criminal investigations.

> (b) The failure to properly and sufficiently conduct character investigations of prospective police officers.

> (c) The failure to take such necessary and proper action against the individual defendant police officers prior to their conduct against decedent, notwithstanding, upon information and belief, these defendants having actual knowledge of prior misconduct and illegal conduct by the individual police officers.

> (d) The failure to implement and enforce sufficient procedures, policies or practices to ensure the security and confidentiality of information systems and databases maintained by the defendants for the exclusive use of their employees, thereby placing the public, in general, and specifically, the plaintiff and decedent, at risk of harm and in fact causing harm and injury to them; as by defendants Eppolito and Caracappa arranging for and participating in the murder and execution of John Otto Heidel.

67. The deficiencies set forth above were collectively, and each such deficiency was individually, a substantial factor in bringing about the aforesaid death of John Otto Heidel and the violations of the Constitutional rights of John Otto Heidel and plaintiff, Tina Morris.

68. Defendants City of New York and New York City Police Department, at all times relevant hereto, had final discretionary authority to promulgate and implement procedures and policies, including policies and procedures as to the screening of police candidates, the supervision and discipline of police officers and security measures for information systems and databases, with respect to the performance of duties of police officers and the abuse and use of data for illegal purposes by police officers.  The said defendants owed the plaintiff and decedent and the public a duty, breached in this case, to avoid deliberate indifference to the Constitutional rights of the public.

69. The foregoing violations of the Constitutional rights of the plaintiff and decedent were undertaken under the color of law, statutes, and regulations of the State of New York.

70. As a result of the foregoing conduct by the defendants the plaintiff Tina Morris, individually and as the Administratrix of the Estate of John Otto Heidel, deceased, has been damaged in an amount to be determined by this Court but in no event less than Twenty Million ($20,000,000.00) Dollars.

## COUNT II:
### VIOLATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. 1983

71. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 70, with the same force and effect as if herein more fully set forth.

15

72. At all times relevant defendants Eppolito and Caracappa injured the plaintiff and decedent with malice and depraved indifference to the life of John Otto Heidel.

73. The foregoing violations of the Constitutional rights of the plaintiff and decedent were undertaken by defendants Eppolito and Caracappa through means and methods made available to them solely through their capacity as police officers employed by defendants City of New York and New York City Police Department under color of law, statutes and regulations of the State of New York.

74. As a result of the foregoing conduct by the defendants herein, the plaintiff, Tina Morris, individually and as the Administratrix of the estate of John Otto Heidel, deceased, has been damaged in an amount to be determined by this Court but in no event less than Twenty Million ($20,000,000.00) Dollars.

## COUNT III:
## WRONGFUL DEATH AND NEGLIGENT INJURY

75. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 74, with the same force and effect as if herein more fully set forth.

76. On or about October 8, 1987, the defendants Eppolito and Caracappa acted recklessly, intentionally and with depraved indifference to human life leading to the death of plaintiff decedent, John Otto Heidel.

77. On or about October 8, 1987, defendants Caracappa and Eppolito with others did bring about and in fact commit murder upon John Otto Heidel.

78. As a result of the foregoing conduct by the defendants Caracappa and Eppolito, plaintiff Tina Morris, individually and as the Administratrix of the estate of John Otto Heidel,

have been damaged in an amount to be determined by this Court, but in no event less than Twenty Million ($20,000,000.00) Dollars.

## COUNT IV:
## WRONGFUL DEATH AND NEGLIGENT INJURY

79. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 78, with the same force and effect as if herein more fully set forth.

80. Defendants City of New York and New York City Police Department are directly responsible and liable for the acts of defendants Caracappa and Eppolito because they knowingly and negligently failed to enforce the laws of the State of New York and the regulations of the New York City Police Department pertaining to the use of confidential databases controlled and maintained by the defendants City of New York and New York City Police Department for the exclusive use of their personnel in the furtherance of their duties of law enforcement and crime prevention.

81. Defendant, City of New York, failed to exercise reasonable care in selecting defendants Caracappa and Eppolito as police officers and/or detectives and improperly training and supervising defendants Caracappa and Eppolito in the skills necessary to exercise their authority as police officers and/or detectives.

82. Prior to and during the acts complained of herein, defendant City of New York and New York City Police Department knew or in the exercise of their duties should have known, the propensity of defendants Caracappa and Eppolito to act wrongfully and illegally in the pursuit of and during the course of their duties and functions. Despite this knowledge or their duty to know, defendants City of New York and New York City Police Department

17

entrusted the power and authority to act as police officers and/or detectives to defendants Caracappa and Eppolito. Such actions constitute gross negligence on the part of the City of New York.

83. The above abuses by Caracappa and Eppolito were condoned by defendants City of New York and New York City Police Department by their failure to properly select, train, supervise, and monitor defendants Caracappa and Eppolito. Defendants City of New York and New York City Police Department were on actual and constructive notice of the connection between Caracappa and Eppolito and organized crime figures. Defendants City of New York and New York City Police Department were aware or should have been aware of the misuses and the conduct of the defendants Caracappa and Eppolito, which led to the death of the decedent, John Otto Heidel.

84. As a result of the foregoing conduct by the defendants herein the plaintiff, Tina Morris, individually and as Administratrix of the estate of John Otto Heidel, have been damaged in an amount to be determined by this Court, but in no event less than Twenty Million ($20,000,000.00) Dollars.

**WHEREFORE**, the plaintiff prays for Judgment against the defendants, and each of them, as follows:

1. Count 1     $20,000,000.00

2. Count 2     $20,000,000.00

3. Count 3     $20,000,000.00

4. Count 4     $20,000,000.00

5. Punitive damages in the amount of $20,000,000.00.

6. Where applicable, the plaintiff further seeks treble damages with respect to any award of damages.

7. The plaintiff seeks reasonable costs and expenses of this action, including but not limited to reasonable attorney fees.

8. Such other relief as the Court deems just.

Dated:  May 30, 2007
         Brooklyn, New York

_Barry E Schulman_

BARRY E. SCHULMAN (BS-7906)
barryeschulman@aol.com
The Law Office of Barry E. Schulman
16 Court Street-Suite 2901
Brooklyn, New York 11241
(718) 855-8855

TERESA R. GUASTAFERRI, LLC
Teresa R. Guastaferri, Esq. (TG-8210)
teresa.guastaferri@trgllclaw.com
1055 Hyland Blvd
Suite 2
Staten Island, New York 10305
(718) 876-5050

19